IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

**PHILLIP DAMRON,**

**Plaintiff,**

v.

**CIVIL ACTION NO.: 5:22-CV-152
(JUDGE BAILEY)**

**KILOLO KIJAKAZI,**[1]
**Acting Commissioner of Social Security,**

**Defendant.**

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

This case arises from the denial of Plaintiff Phillip Damron's ("Plaintiff") Title II application for period of disability and disability insurance benefits ("DIB"). After Plaintiff's application proceeded through the administrative process, a United States Administrative Law Judge ("ALJ"), concluded that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff's request for review by the Appeals Council was denied, making the ALJ's decision the final decision of the Commissioner of Social Security ("Defendant" or "Commissioner"). Now, Plaintiff seeks judicial review of the Commissioner's decision. Because the Commissioner's final decision to deny Plaintiff's claim for DIB and SSI contains no legal error and is supported by substantial evidence, the undersigned United States Magistrate Judge **REPORTS** and **RECOMMENDS** that Plaintiff's Motion for Summary Judgment [ECF No. 11] by which he requests that the ALJ's decision be set aside, be **DENIED** and Defendant's Motion for Summary Judgment [ECF No. 14] be **GRANTED**.

---

[1] Kilolo Kijakazi may be automatically substituted in place of former commissioner Andrew M. Saul pursuant to Fed. R. Civ. P. 25(d).

1

## II.   PROCEDURAL HISTORY

On March 24, 2020, Plaintiff filed his application under the Social Security Act for DIB, alleging disability that began on February 11, 2019. (R. 20). This claim was initially denied on November 16, 2020 and denied again upon reconsideration on January 8, 2021. (R. 20). Plaintiff then filed a written request for a hearing, which was held before the ALJ on June 9, 2021, in Charleston, West Virginia. (R. 20, 41). Plaintiff, proceeding with a representative, appeared via teleconference and testified. Patricia Posey, an impartial vocational expert ("VE"), also testified at the hearing. (R. 41-44). On June 30, 2021, the ALJ issued an unfavorable decision to Plaintiff, finding that he was not disabled within the meaning of the Act. (R. 36).

Plaintiff filed a request for review of the ALJ's decision. (R. 12). Subsequently, on January 21, 2022, the Appeals Council issued a Notice denying Plaintiff's request for review. (R. 6). Plaintiff filed his Complaint with this Court on June 15, 2022. [ECF No. 1]. The Commissioner filed the Answer and Administrative Record on January 3, 2023. [ECF Nos. 8, 9]. Plaintiff filed a Motion for Summary Judgment and brief in support, thereof, on February 2, 2023. [ECF No. 11]. Defendant filed a Motion for Summary Judgment and memorandum in support, thereof, on March 3, 2023. [ECF No. 14]. Plaintiff filed a reply in support of his summary judgment motion on March 17, 2023. [ECF No. 16]. After the matter was fully briefed, the undersigned conducted a hearing on April 19, 2023 to receive argument from counsel.

The matter is now before the undersigned for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule of Civil Procedure 9.02(a). Having reviewed the parties' motions and the administrative record, the undersigned now issues the following Report and Recommendation.

### III.   BACKGROUND

**A. Personal History**

Plaintiff was born on July 8, 1975 (R. 43), making him 43 years old as of his alleged onset date (February 11, 2019). Information from the Consultative Examination shows that he is six feet, one inch tall and weighed 260 pounds. (R. 76). Plaintiff obtained a high school diploma. (R. 320). For purposes of this review, Plaintiff's last day of work was February 11, 2019.[2] Up to his last day of work in 2019, Plaintiff was employed as a bakery manager. (R. 49). He held that position for 11 years. Id. In this position, he was involved in all aspects of operations. Id. For the three years preceding that position, he was an assistant bakery manager for a different company. (R. 62). In his work at the bakeries, the heaviest weight which Plaintiff lifted was 50 pounds. (R. 62). The impairments which caused Plaintiff to leave his last job included fatigue, shortness of breath, dizziness, body aches, arthritic pain, neuropathy, coughing, and headaches and nausea (the latter as a result of medically-induced diabetes). (R. 50-51).

Plaintiff alleges that he is limited in his ability to work due to "a number of severe impairments, including sarcoidosis/obstructive airways disease, diabetes mellitus, obesity, hypertension, mild degenerative disc disease, and mild left foot osteoarthritis." [ECF No. 11, at 3]. For purposes of his claim here, Plaintiff focuses on impairments related to his ambulation.

---

[2] As the ALJ summarized (R. 22), Plaintiff stopped working in February of 2019, for approximately three months. During that time when he was not working, Plaintiff relied on sick, disability, vacation, and bonus pay. Id. In May of 2019, Plaintiff attempted to work, until approximately October of 2019. Id. Plaintiff testified before the ALJ that he was terminated from this employment in October of 2019 because of his inability to work, owing to his impairments. Id. The ALJ found that Plaintiff "satisfie[d] the requirements of an unsuccessful work attempt as there was a break in work, the work attempt did not exceed six months, and the work attempt ended due to the claimant's impairments." Id.

In the hearing before the ALJ, Plaintiff's representative acknowledged that Plaintiff attempted work, unsuccessfully, in the months following the alleged onset date of February 11, 2019. At that proceeding, Plaintiff suggested a later alleged onset date of December 11, 2019. (R. 47-48). The ALJ acknowledged this, and ultimately settled on the earlier alleged onset date of February 11, 2019. (R. 22)

### B. Medical History

In accordance with the Court's Order Directing Filing of Briefs [ECF No. 10], the parties were required to produce a stipulation of facts in order to provide the Court with a chronology in narrative form of Plaintiff's relevant medical history. Accordingly, the undersigned relies upon those stipulated facts throughout this report and recommendation. See Pl's Brief Supp. Mot. Summ. J., ECF No. 11, at 3-6; Def.'s Brief Supp. Mot. Summ. J., ECF No. 14, at 2-6.

### IV. THE FIVE-STEP EVALUATION PROCESS

To be disabled under the Act, a claimant must meet the following criteria:

> [The] individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work…'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A). The Commissioner uses the following five-step sequential evaluation process to determine if a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairments(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a)(4); 416.920. If the claimant is determined to be disabled or not disabled at one of the five steps, the process does not proceed to the next step. Id.

## V.     ADMINISTRATIVE LAW JUDGE'S DECISION

At step one of the sequential evaluation process outlined above, the ALJ concluded that, since February 11, 2019, the alleged onset date, Plaintiff had not engaged in any substantial gainful activity. (R. 22). At step two, the ALJ found that Plaintiff suffers from the following severe impairments: sarcoidosis/obstructive airways disease, diabetes mellitus, obesity, hypertension, mild degenerative disc disease, and mild left food osteoarthritis. (R. 23). At step three, the ALJ found that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals the severity of one of the listed impairments. (R. 26). At step four, the ALJ determined that Plaintiff's RFC as follows:

> . . . to perform sedentary work as defined in 20 CFR 404.1567(a) except he can operate foot controls with the left foot frequently. The claimant can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, and crawl occasionally. The claimant can work at unprotected heights occasionally and around moving mechanical parts occasionally and can operate a motor vehicle frequently. He can work in weather occasionally, in humidity occasionally, in atmospheric conditions occasionally, in extreme cold occasionally, and in extreme heat occasionally. He can talk frequently.

(R. 28). Finally, the ALJ determined that Plaintiff is unable to perform past relevant work, but can perform other jobs that exist in the national economy that exist in significant numbers, such as call-out operator, document preparer, and food sorter. (R. 34-35). Thus, the ALJ found that Plaintiff is not disabled within the meaning of the Act. (R. 36).

## VI.  DISCUSSION

### A. Scope of Review

In reviewing an administrative finding of no disability, the scope of review is limited to determining whether the ALJ applied the proper legal standards and whether the ALJ's factual findings are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). A "factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Likewise, a factual finding by the ALJ is not binding if it is not supported by substantial evidence. See generally Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). When determining whether substantial evidence exists, a court must "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ['s]." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)).

### B. Contention of the Parties

To be clear, the only issue raised on appeal of the ALJ's decision is whether the ALJ, in arriving at Plaintiff's RFC, erred in not accounting for Plaintiff's purported need for an assistive device (cane) for balancing. The issue centers on information contained in a three-page, pre-printed

document (the parties argue about whether it is a mere "form" or a more substantive "report") produced by physician Michelle Abe, D.O. ("Dr. Abe") (R. 693-695). The issue stems, particularly, from two boxes which Dr. Abe checked on a single page of the document, indicating that ". . . aids such as canes, braces, crutches, or the assistance of another person [are] required for locomotion [ ]" if Plaintiff is ambulating for a distance of one block or more. (R. 695).

Plaintiff contends that the ALJ's decision is unsupported by substantial evidence. [ECF No. 11]. Plaintiff's principal argument is that the ALJ did not account for Plaintiff's need for an assistive device for balancing, and that Plaintiff meets the Commissioner's test set forth in SSR 96-9p. As such, Plaintiff would have the Court remand the matter for the ALJ to include Plaintiff's need for an assistive device in formulating the RFC.

Defendant argues, though, that the ALJ's decision is supported by substantial evidence. [ECF No. 14]. Defendant stresses that the only entry in the record about Plaintiff's use of an assistive device is in the document produced by Dr. Abe. Per Defendant, this document was generated during the course of Plaintiff's hospitalization, and it is in that context which it should be viewed. Thus, there is nothing otherwise in the record to show that Plaintiff requires an assistive device beyond this limited instance of his hospitalization. What is more, Defendant argues, Dr. Abe merely checked a box on a pre-printed form, which does not demonstrate the circumstances in which an assistive device is needed, as SSR 96-9p otherwise requires. Finally, Defendant notes that the record contains information about Plaintiff's unsteady gait, and that the ALJ <u>did</u> account for it in the RFC. Nothing otherwise in the record would require the ALJ to account for the need for an assistive device in the RFC.

### C. Analysis of the Administrative Law Judge's Decision

As is principally the question in these matters, the substantive issue here is whether the ALJ's review of the medical records is sufficient enough to receive deference under the "substantial evidence," standard, or whether the ALJ's review was so deficient as to merit remand. More specifically, the issue is whether the document generated by Dr. Abe establishes that Plaintiff needs an assistive device for balance, such that the matter should be remanded to the ALJ to account for an assistive device in the RFC. The undersigned **FINDS** that Dr. Abe's document does <u>not</u> so establish the need for an assistive device. Thus, the undersigned **FINDS** that substantial evidence supports the ALJ's thorough review, such that the decision below is entitled to deference.

Social Security Ruling ("SSR") 96-9p is pivotal here. In pertinent part, it establishes that:

> **Medically required hand-held assistive device:** To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.
>
> Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand. For example, an individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers. On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.

> In these situations, too, it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work.

SSR 96-9p (footnote omitted).

As Defendant points out, the record generally belies any argument that Plaintiff requires an assistive device for balance. Records generated in the same time period as Dr. Abe's document show very little issue with Plaintiff's lower extremities. (R. 664-685). In the month prior, the record shows that Plaintiff ambulated on his own, without apparent use of any assistive device. (R. 539-543). Even during the consultative examination, Plaintiff was found to have a "limping gait," but not one which is "lurching or unpredictable." (R. 321). During that process, the examiner concluded that Plaintiff did <u>not</u> need an assistive device. (<u>Id</u>.) Thus, setting Dr. Abe's document aside, there otherwise is nothing in the record from an acceptable medical source to show Plaintiff's need for an assistive device. Nor does the record establish the reason for which it supposedly is needed, as required under SSR 96-9p. As such, an ALJ would be hard-pressed to conclude that the record supports a finding than an assistive device is medically necessary, as SSR 96-9p requires. Plaintiff thus fails to show that the ALJ's decision is unsupported by substantial evidence. <u>Hays</u>, 907 F.2d at 1456.

As for Dr. Abe's document, it was generated in the context of a temporary hospitalization. It cannot be reasonably read to conclude that Plaintiff requires an assistive device in the long-term. The pre-printed document is truncated and conclusory, with the portion concerning an assistive device consisting only of Dr. Abe having checked two boxes. There is no further context or qualitative information about the assistive device. Because Dr. Abe's document was generated as part of a temporary hospitalization, and given the dearth of any further information in the document regarding an assistive device, the ALJ was correct in formulating the RFC without accounting for

9

an assistive device. The ALJ's finding is only bolstered by the balance of the record showing just the opposite – that Plaintiff does not need an assistive device.

As an aside, even if the record showed that Plaintiff requires an assistive device, the plain language of SSR 96-9p provides that is not, standing alone, preclusive of work. In pertinent part, SSR 96-9p provides that ". . . an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations. . .". Nothing in the record, including Dr. Abe's document, helps Plaintiff overcome this hurdle. Therefore, again, Plaintiff falls short in showing that the ALJ's decision is not supported by substantial evidence.

In sum, Defendant is correct that Dr. Abe's document does not demonstrate a medical necessity for an assistive device. Indeed, all indications are that the document, with its meager recommendation about an assistive device, was prepared in the context of Plaintiff's hospitalization. Nothing about it supports a conclusion that Plaintiff requires an assistive device for balance on a regular, ongoing basis. Moreover, nowhere else in the record is there anything about Plaintiff using an assistive device or one being recommended for him. Thus, nothing in the record would prompt the ALJ to ask the VE about use of an assistive device. And therefore, nothing would lead the ALJ conclude that Plaintiff is so impaired that he needs an assistive device. As such, nothing would require the ALJ to account for use of an assistive device in formulating the RFC.

## VII. <u>RECOMMENDATION</u>

For the reasons herein stated, the undersigned **FINDS** that the Commissioner's decision denying Plaintiff's claim for DIB does <u>not</u> contain legal error and <u>is</u> supported by substantial evidence. Accordingly, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary

Judgment [ECF No. 11] be **DENIED**, Defendant's Motion for Summary Judgment [ECF No. 14] be **GRANTED**, the decision of the Commissioner be **AFFIRMED**, and this case be **DISMISSED WITH PREJUDICE**.

Any party shall have fourteen (14) days (filing of objections) from the date of the filing of this Report and Recommendation to file with the Clerk of the Court **specific written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.** A copy of such objections should also be submitted to the presiding United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to timely file written objections to the Report and Recommendation as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk of the Court is **DIRECTED** to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Respectfully submitted June 6, 2023.

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE